**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL KIMELMAN,<br>*Plaintiff*,<br>v.<br>MERRICK B. GARLAND et al.,<br>*Defendants*. | Civil Action No. 21-675 (TJK) |

**MEMORANDUM OPINION**

Michael Kimelman was convicted of federal securities fraud in 2011. He now lives in New York and wants to purchase and possess firearms, but his status as a felon prevents him from doing so under federal law. *See* 18 U.S.C. § 922(d)(1) and (g)(1). Kimelman sued Defendants, the Attorney General and the Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, seeking declaratory and injunctive relief from the application of these provisions against him. Kimelman claims that he is entitled to that relief either under a statutory exemption or because the provisions are unconstitutional as applied to him. Defendants moved to dismiss, arguing that he lacks standing because New York law independently bars him from purchasing or possessing firearms. For the reasons explained below, the Court agrees and will grant Defendants' motion.

## I. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, when

faced with a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)). In reviewing such a motion, the Court is not limited to the allegations in the complaint and may consider materials outside the pleadings but must "accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)).

## II. Analysis

The jurisdiction of the federal courts extends only to cases and controversies "of the justiciable sort referred to in Article III" of the Constitution—that is, only to claims for which the plaintiff can show that he has "standing" to bring. *Lujan*, 504 U.S. at 560. To establish standing, a plaintiff must show that (1) he has "suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely," not just speculative, "that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 180–81 (2000). Kimelman lacks standing because he has not satisfied the latter two requirements: traceability and redressability.

### A. Traceability

Traceability looks at "the relationship between the alleged unlawful conduct and the injury." *Mideast Sys. & China Civ. Constr. v. Hodel*, 792 F.2d 1172, 1176 (D.C. Cir. 1986). "It requires that there be a causal connection between the challenged action and the injury alleged in the complaint." *Fed'n for Am. Immigr. Reform v. Reno*, 897 F. Supp. 595, 604 (D.D.C. 1995) (cleaned up). As relevant here, the injury must "be fairly traceable to the challenged action of the

defendant and not the result of the independent action of some third party not before the court." *NO Gas Pipeline v. FERC*, 756 F.3d 764, 768 (D.C. Cir. 2014) (cleaned up).

Kimelman's traceability problem arises because federal law is not the only reason he cannot lawfully purchase or possess a firearm—New York law also prohibits him from doing so. More specifically, New York law prohibits those "convicted anywhere of a felony" from possessing a firearm.[1] N.Y. Penal Law §§ 400.00(1)(c) & 265.01. It also bars the "purchase[]" of "a firearm, rifle or shotgun" when the would-be purchaser knows that "he or she is prohibited from possessing a firearm, rifle or shotgun because of a prior conviction." *Id.* § 265.17(1). Kimelman was convicted of three federal felonies, so these prohibitions apply to him. *See* ECF No. 1 ¶ 18; Superseding Indictment & Judgment in a Criminal Case, *United States v. Kimelman*, No. 10-cr-56-RJS-6 (S.D.N.Y Apr. 7 & Oct. 13, 2011), ECF Nos. 167, 288.

New York law provides mechanisms through which individuals convicted of a felony can escape the applicability of these statutes, but Kimelman has not successfully employed them. A "Certificate of Relief from Civil Disabilities" from the New York Department of Corrections and Community Supervision, ECF No. 1 ¶¶ 35, 38; N.Y. Correct. §§ 701 & 703, can "remove" Penal Law § 400.00(1)(c)'s "prohibition against holding a" firearm license, *In re Crane*, 129 N.Y.S.3d 653, 656 (N.Y. Co. Ct. 2020). And a "Certificate of Good Conduct" exempts a person convicted

[1] Defendants argue, and Kimelman does not contest, that New York law bars him from purchasing and possessing all types of firearms, even if it does so in a less-than-straightforward way. New York requires a license to purchase or possess firearms other than longarms. *See Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012); *Weinstein v. Ryder*, No. 19-cv-6236 (SJF/AKT), 2021 WL 1108679, at *2 (E.D.N.Y. Mar. 23, 2021); *see also* N.Y. Penal Law § 265.00(3). And New York law proscribes the issuance of a license to anyone who has been "convicted anywhere of a felony." N.Y. Penal Law § 400.00(1)(c). That New York law does not require a license for longarms, though, does not mean that a felon is free to purchase or possess them. New York law also prohibits the possession of "a rifle, shotgun, antique firearm, black powder rifle, black powder shotgun, or any muzzle-loading firearm," *i.e.*, longarms, by anyone who "has been convicted of a felony or serious offense." *Id.* § 265.01(4).

of a felony from the application of Penal Law § 265.01(4). N.Y. Penal Law § 265.20(a)(5); *see People v. Navarro*, 71 N.Y.S.3d 297, 300 (N.Y. App. Div. 2018). But Kimelman never says that he applied for or received a Certificate of Good Conduct. And while he did apply for a Certificate of Relief from Civil Disabilities, he was provided relief "*except* for [his] right to lawfully possess firearms."[2] ECF No. 1 ¶ 38 (emphasis added). As a result, the existence of these mechanisms does not change Kimelman's inability to lawfully purchase or possess a firearm under New York law. Thus, he cannot show that his alleged harm is fairly traceable to federal law.

**B. Redressability**

Traceability "and redressability are closely related[,] like two sides of a coin." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (cleaned up). While traceability looks at the connection between the alleged harm and the challenged law, redressability looks at the connection between the alleged harm and the relief requested. "Redressability requires a litigant to demonstrate a likelihood that the requested relief will redress the alleged injury." *Duberry v. District of Columbia*, 924 F.3d 570, 581 (D.C. Cir. 2019) (cleaned up).

In short, because New York law would still prohibit Kimelman from purchasing or possessing firearms no matter how the Court resolves his claims, he has not shown that a favorable decision would redress his inability to do so.

[2] Kimelman argues that his firearms rights were excluded from the relief afforded him under this state law procedure because federal law would have still barred him from purchasing or possessing firearms. ECF No. 10 at 7 n.2; ECF No. 1 ¶ 38. But that is sheer speculation. Of course, New York cannot restore Kimelman's right to purchase and possess a firearm under federal law. *See Beecham v. United States*, 511 U.S. 368, 374 (1994). But that does not suggest why the New York Department of Corrections and Community Supervision decided not to restore his rights under state law. Thus, a traceability problem remains. *See Double R Ranch Tr. v. Nedd*, 284 F. Supp. 3d 21, 31 (D.D.C. 2018) (finding that the plaintiffs could "[]not establish traceability to the challenged action" since "even the last link in the causal chain remain[ed] somewhat speculative").

First, Kimelman argues that a favorable decision by this Court would mean that his "firearm rights remained intact and unaffected by his federal convictions," making New York's prohibitions inapplicable. ECF No. 10 at 9. By way of background, federal law makes it "unlawful for any person who has been convicted . . . [of] a crime punishable by imprisonment for a term exceeding one year . . . [to possess] any firearm." 18 U.S.C. § 922(g)(1). Similarly, felons are barred from purchasing firearms under Section 922(d)(1). Kimelman points out that convictions for "offenses pertaining to antitrust violations, unfair trade practices, restraints of trade or other similar offenses relating to the regulation of business practices" and convictions for which a person has had his "civil rights restored under federal law" are exempted from these prohibitions. *Beecham*, 511 U.S. at 374; *see* 18 U.S.C. § 921(a)(20). Thus, he argues, if this Court were to find that his securities offense was an "offense[] pertaining to antitrust violations, unfair trade practices, restraints of trade or other similar offenses relating to the regulation of business practices," or otherwise "restore" his federal firearms rights, Section 922(g)(1) would not apply, and so his firearms rights would be intact under New York law.

Unfortunately for him, Kimelman conflates his firearms rights under federal law with his firearms rights under state law. Under New York law, the definition of "conviction" does not turn on the type of offense (for example, whether the offense was an antitrust violation) or the status of an offender's civil rights.[3] Nor, under New York law, does the definition of felony.[4] N.Y. Penal Law § 10.00(5). Thus, even if federal law did not bar him from possessing a firearm for one of

[3] In New York, a "conviction" is "the entry of a plea of guilty to, or a verdict of guilty upon, an accusatory instrument other than a felony complaint, or to one or more counts of such an instrument." N.Y. Crim. Pro. § 1.20(13); *see also* N.Y. Correct. Law § 700(2)(c).

[4] "Felony" is defined under New York law as "an offense for which a sentence to a term of imprisonment in excess of one year may be imposed." N.Y. Penal Law § 10.00(5).

the reasons he suggests, his conviction of a federal felony would remain, and that conviction would bar him from possessing of a firearm under New York law. *See In re Wasserman*, 562 N.Y.S.2d 920, 921 (N.Y. Co. Ct. 1990) ("the Federal restoration of firearms privileges does not erase the felony conviction which is a statutory bar to the issuance of a" license under N.Y. Penal Law § 400.00(1)); *In re Alarie*, 643 N.Y.S.2d 926, 927 (N.Y. Co. Ct. 1996) (abrogated on other grounds by *Hecht v. Bivona*, 761 N.Y.S.2d 485, 485 (N.Y. App. Div. 2003) (Mem.)) ("Even the restoration of Federal firearms privileges by the Federal Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms pursuant to 18 USC § 925(c) does not erase the felony conviction which is a statutory bar to the issuance of a pistol permit under Penal Law § 400.00(1) in New York." (cleaned up)).

Second, Kimelman argues that the New York Department of Corrections and Community Supervision could reconsider its decision not to restore Kimelman's right to purchase and possess firearms, especially if this Court were to find in his favor. ECF No. 10 at 9. But under that logic, "any favorable impact" of this Court's decision would "depend[] utterly upon the actions of third parties not before the court, whose behavior is difficult to predict." *Branton v. FCC*, 993 F.2d 906, 911 (D.C. Cir. 1993) (cleaned up). Redressability cannot rest on mere speculation about what a third party might do. *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (plaintiff lacked standing because the possibility of the court's decision alleviating the harm depended "on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict").

* * *

Other courts have found that plaintiffs lacked standing in similar circumstances. For example, in *Daogaru v. United States Attorney General*, 683 F. App'x 824 (11th Cir. 2017), the

plaintiff challenged the constitutionality of Section 922(g)(1). But the Eleventh Circuit found that the complaint was "nonjusticiable because [the plaintiff] failed to satisfy at least two of the threshold requirements for standing: causation and redressability." *Id.* at 825. As here, laws where the plaintiff resided precluded him from "possessing a firearm." *Id.* at 826. Thus, he "would still face prosecution" in that state "for possessing a firearm even if the district court issued an order that enjoined federal officials from prosecuting him under [S]ection 922(g)(1)." *Id.* Likewise, in *Sherlund v. Sessions*, No. 18-cv-1126 (PHX/DGC), 2018 WL 5982602, at *2 (D. Ariz. Nov. 14, 2018), the court dismissed the plaintiff's complaint for lack of standing because the plaintiff "challenge[d] only the federal statute prohibiting his gun possession when an Arizona statute also independently prohibit[ed] approval of his concealed carry permit." The Court explained that a decision on the plaintiff's challenge to Section 922 would "not change the state laws which prohibit Plaintiff from possessing a gun. Nor [did] Plaintiff show[] that it w[ould] make a change in state law 'substantially likely.'" *Id.* at *3. So too here.[5]

Kimelman claims that these cases help, not hurt, his argument. According to him, *Daogaru* and *Sherlund* support the notion that a restoration of firearms rights by the jurisdiction in which the felon was convicted renders other states' firearm bans inapplicable. ECF No. 10 at 11. And under that rationale, New York would "be bound by the federal court's declaration of the intact status of Plaintiff's firearm rights." *Id.* Kimelman misreads *Daogaru* and *Sherlund*, and again conflates his firearms rights under federal and state law. What both cases show is that a plaintiff's

[5] In *Medina v. Sessions*, 279 F. Supp. 3d 281, 286 (D.D.C. 2017), the court rejected the Government's argument that the plaintiff lacked standing to challenge the applicability of Section 922(g)(1), even though Plaintiff's state of residence, California, "independently preclude[d] [the plaintiff] from owning, possessing, or purchasing a firearm." But in that case, the plaintiff also sought to possess a firearm in New Mexico, where he also owned residential property and "could lawfully possess a gun." *Id.* Kimelman has not suggested that he wants to purchase or possess a firearm in a state other than New York.

firearms rights in his state of residence state turn on the laws of that state. True, in both cases, the courts noted that a plaintiff would not be prohibited from possessing a firearm in his state of residence under that's state law if his "right to possess a firearm" had been fully "restored." *Sherlund*, 2018 WL 5982602, at *2; *Daogaru*, 683 Fed. App'x at 825. But that was because the law of the plaintiff's state of residence so provided. Nothing in these cases supports Kimelman's argument that a favorable ruling by this Court would bind New York as to his firearms rights under that state's laws.

## III. Conclusion

For all these reasons, the Court will grant Defendants' motion to dismiss. A separate Order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 3, 2022